## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BLUEFIELD DIVISION

| | |
|---|---|
| **JOHN WILLIAM SHADE, III,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:23-00192** |
| ) | |
| **JASON BAILEY,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

On March 8, 2023, Plaintiff, acting *pro se*,[1] filed his Complaint seeking relief pursuant to

the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged

violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal</u>

<u>Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). By

Order entered on March 10, 2023, the undersigned directed Plaintiff to amend his Complaint to

clarify his claims. (Document No. 6.) Following the granting of an extension of time, Plaintiff

filed his Amended Complaint on June 12, 2023, again seeking relief pursuant to the FTCA and

for alleged violations of his constitutional rights pursuant to <u>Bivens</u>. (Document Nos. 10 and 11.)

In his Amended Complaint, Plaintiff names the following: (1) United States of America; (2)

Jason Bailey, Assistant United States Attorney; (3) Brittany Boyer, Designations and Sentence

Computation Officer; (4) Michael Carvajal, Former Director of BOP; (5) C. Day, Unit Manager

FCI McDowell; (6) Fred Malone, Corrections Counselor FCI McDowell; (7) Christopher

Maruka, Former Warden FCI McDowell; (8) James Petrucci, BOP Regional Director; (9) M.

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Rife, CMC FCI McDowell; (10) Eric Rokosky, Former Warden FCI McDowell; (11) Fred Saunders, Former Unit Manager FCI McDowell; (12) James Willis, BOP General Counsel; and (13) John Does 1 – 10, Unknown Agents or Employees of BOP. (Document No. 11, pp. 6 – 13.) Plaintiff alleges that Defendants "continued to illegally imprison Plaintiff, who, because of the First Step Act of 2018 ("FSA") (codified at 18 U.S.C. § 3624), should have been released far sooner." (Id., p. 2.) Plaintiff alleges he was over-detained due to Defendants' failure to do the following: (1) "[F]aithfully and timely abide by the law by implementing evidence-based recidivism reduction (EBRR) programs as directed by Congress;" (2) "[A]ccurately calculating Plaintiff's risk of recidivism (PATTERN Score);" (3) "[A]ccurately calculating his release date;" and (4) "[T]imely releasing him." (Id., p. 2.) Plaintiff states "[t]his action is for money damages and injunctive relief to enforce the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution, and any applicable state laws, governing false imprisonment, unlawful restraint, false arrest, negligence and/or intentional infliction of emotional distress against Defendants named above for the Plaintiff's over-detention in BOP facilities." (Id.) Plaintiff asserts that he "was confined well after he paid his debt to society and should have been released from prison." (Id., pp. 2 – 3.) Plaintiff alleges that the "basis for his detention had expired" and he was imprisoned longer than his sentence. (Id., p. 3.) Plaintiff concludes that Defendants violated his rights under the Due Process Clause and the Eighth Amendment by incarcerating Plaintiff beyond the termination of his sentence. (Id.) In support, Plaintiff alleges that he was "wrongfully held in custody" by the BOP for 109[2] days "beyond the time at which the basis for his detention had expired as a result of 'earned time credit' that were not applied in contravention of statute."

---

[2] Plaintiff explains that he believes he was over-detained by 109 days based on the following: "His release paperwork indicated that the end date of his 3 years of supervised release was to be January 16, 2025. That end date corresponds with Plaintiff's release date – minus exactly 109 days." (Document No. 11, p. 21.)

(Id., p. 4.) Plaintiff claims that "[f]rom on or before January 16, 2022, to May 5, 2022, BOP staff and administration showed deliberate indifference in *refusing* to release him, despite Plaintiff having served his time." (Id.) Plaintiff asserts he "should have been a free man on or before January 16, 2022" and "[s]taff at the BOP knew this because they issued him release paperwork with a backdated start date to his term of supervised release that matched the exact date – January 16, 2022." (Id.) Plaintiff further states that he was also "refused any pre-release halfway house placement per instruction from the United States Attorney's Office." (Id.) Plaintiff contends that beginning February 2, 2021, Plaintiff made a verbal request to Defendant Saunders, sent Trulincs messages to institutional staff, and filed administrative remedies "informing BOP administration officials that his release date had been calculated incorrectly and requesting that his release date be adjusted to reflect the 'earned time credits' that he had earned pursuant to the First Step Act of 2018." (Id., pp. 5 – 6, 15 - 21.) Plaintiff further notes that he "filed a habeas corpus petition on January 24, 2022, in the Southern District of West Virginia in Case No. 1:22-cv-00043." (Id., pp. 6, 18.) Plaintiff alleges that this "petition served to unequivocally put the Warden, the BOP/USA, and the United States Attorney's Office on full notice of the errors made in calculating his release date and the resulting over-detention of Plaintiff." (Id., p. 6.) Plaintiff argues that AUSA Bailey's Response to his Section 2241 Petition exhibits that the BOP was erroneously interrupting the FSA. (Id., pp. 18 and 20.) Specifically, Plaintiff complains that the "convoluted misinterpretation of the relevant legislation relies on the argument that prisoners with a particular PATTERN score are 'unable to apply any [FSA] credits' and use them to go home." (Id., p. 20.) Plaintiff states that the FSA "contains nothing to support such a policy." (Id.) Plaintiff asserts that on April 11, 2022, his PATTERN score was

"corrected" to reflect his "low risk of recidivism." (Id.) Plaintiff claims that on "May 3, 2022, the BOP suddenly and without explanation determined that Plaintiff was due for immediate release" and "Plaintiff was finally freed from custody on May 5, 2022."[3] (Id., pp. 6 and 21.)

## **STANDARD**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen each case in which a plaintiff seeks to proceed *in forma pauperis*, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. This screening is done prior to consideration of an Application to Proceed Without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of

---

[3] Plaintiff acknowledges that on September 27, 2019, he was convicted in the United States District Court for the Southern District of Ohio on two counts of being a felon in possession of a firearm and one count of being in a felon in possession of ammunition in violation of 18 U.S.C. § 922(g). (Document No. 11, p. 14.) Plaintiff was sentenced to a term of 24 months imprisonment to be followed by three-years of supervised release on September 23, 2020.

applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## ANALYSIS

1. **Bivens Claim:**

   A. **Claims Against Defendants in their Official Capacities:**

   "[F]ederal courts must take cognizance of the valid constitutional claims of prison

---

(*Id.*) Plaintiff states that he self-surrendered to BOP custody on January 4, 2021. (*Id.*)

inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A

Bivens action is a judicially created damages remedy which is designed to vindicate violations of

constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed.

Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05. A Bivens action is the federal

counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought

against federal agents acting under the color of their authority for injuries caused by their

unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury

is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the

violation of a valid constitutional right by a person acting under color of federal law. The United

States Supreme Court has held that an inmate may name a federal officer in an individual

capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to

Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However,

Bivens claims are not actionable against the United States, federal agencies, or public officials

acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996,

127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers,

187 F.3d 348, 355 n. 7 (4th Cir. 1999).

   In his Amended Complaint, Plaintiff specifically states that he is asserting his Bivens

claim against the following Defendants in their official capacities: (1) AUSA Jason Bailey; (2)

Brittany Boyer; (3) Michael Carvajal; (4) C. Day; (5) Fred Malone; (6) Christopher Maruka; (7)

James Petrucci; (8) M. Rife; (9) Eric Rokosky; (10) Fred Saunders; (11) James Wills; and (12)

John Does 1 – 10. (Document No. 11, pp. 7 - 12.) Based upon the foregoing, the undersigned

finds that Plaintiff's Bivens action against the foregoing Defendants in their official capacities

should be dismissed. As stated above, Bivens claims are not actionable against defendants acting

their official capacities. <u>See</u> <u>Meyer</u>, 510 U.S. at 485; <u>also see</u> <u>Doe v. Chao</u>, 306 F.3d 170 (4th Cir. 2002)("[A] *Bivens* action does not lie against either agencies or officials in their official capacities").

**B.    Fourth Amendment Claims:**

In his Amended Complaint, Plaintiff concludes he was subjected to an unlawful search and seizure, false arrest, and false imprisonment in violation of his Fourth Amendment rights. In support, Plaintiff claims that he was over-detained due to the Defendants failing to properly and timely apply his earned time credits pursuant to the FSA. Plaintiff completely fails to allege any allegations to support a claim of an unlawful search or seizure. "When an officer improperly obtains a search warrant using deceptive falsities or omissions and uses that ill-gotten warrant to search and seize property, the Fourth Amendment's right to be free from unreasonable searches and seizures is violated." <u>Smith v. Travelpiece</u>, 31 F.4th 878, 884 (4th Cir. 2022)(citations omitted). Plaintiff's Amended Complaint is void of any allegations that he was subjected to a search or seizure. Next, the undersigned will consider Plaintiff's claim that he was subjected to false arrest and false imprisonment. Since Plaintiff does not dispute that he was arrested pursuant to a facially valid warrant regarding his underlying criminal charges, his claims for false arrest and false imprisonment fail as a matter of law.[4] <u>See</u> <u>Porterfield v. Lott</u>, 156 F.3d 563, 568 (4th Cir. 1998)("[A] public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant. At most, such an official can be pursued through a cause of action for malicious prosecution."); <u>Wallace v. Kato</u>, 549 U.S. 384, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007)("If there is a false arrest claim, damages from that claim covers the time of

---

[4]    The Supreme Court noted that "[f]alse arrest and false imprisonment overlap; the former is a species of the later." *Wallace*, 127 S.Ct. at 1095.

7

detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.") Thus, a plaintiff's claim for false arrest or false imprisonment ceases once plaintiff is detained pursuant to legal process, and at this point, plaintiff's claim becomes a claim of malicious prosecution.[5] Id., 549 U.S. at 388-89, 127 S.Ct. at 1091. Plaintiff has wholly failed to state a cognizable claim of false arrest or false imprisonment.

### C.    No Liberty Interest in FSA credits:

In his Amended Complaint, Plaintiff contends that Defendants violated his due process rights by failing to appropriately and timely apply his earned time credits pursuant to the FSA thereby resulting in Plaintiff's over-detention.

On December 21, 2018, the FSA of 2018 was signed into law and initiated a system that allows eligible prisoners to earn time credits for successfully completing "evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A). Specifically, eligible prisoners[6] that successfully complete evidence-based recidivism reduction programming or productive activities "shall *earn* 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A)(emphasis added). Additionally, a prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall *earn* an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction

---

[5] A claim for malicious prosecution accrues when the prosecution has terminated in Plaintiff's favor. *See Covington v. City of New York*, 171 F.3d 117 (2d Cir.), *cert. denied*, 528 U.S. 946, 120 S.Ct. 363, 145 L.Ed.2d 284 (1999); *Rose v. Bartle*, 871 F.2d 331, 348-49, 351 (3d Cir. 1989). In the instant case, Plaintiff has failed to state a claim of malicious prosecution because he has not alleged that criminal proceeding terminated in his favor.

[6] Inmates convicted of certain enumerated offenses and inmates with final removal or deportation orders are not eligible to earn credits. See 18 U.S.C. § 3632(d)(4)(D) and (E).

programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii)(emphasis added). A prisoner, however, may not earn FSA time credits "for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of enactment of this subchapter," December 21, 2018. 18 U.S.C. § 3632(d)(4)(B).

The FSA created a "new risk and needs assessment system to provide appropriate programing for prisoners." Musgrove v. Ortiz, 2019 WL 2240563, * 2 (D.N.J. May 24, 2019). Thus, FSA added subsection (h) to 18 U.S.C. § 3621. Pursuant to Section 3621(h), the BOP was required to create the risk and needs assessment system by January 15, 2020, begin implementing it on that date, and have full implementation complete on January 15, 2022. See Goodman v. Ortiz, 2020 WL 5015613 (D.N.J. Aug. 25, 2020). On July 19, 2019, the Attorney General published this system, entitled "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN"). The BOP uses PATTERN to evaluate "the recidivism risk of each prisoner as part of the intake process, and classifies each prisoner as having minimum, low, medium, or high risk for recidivism." United States v. Tinsley, 2021 WL 5084691, * 16 (D.Md. Nov. 2, 2021); also see 18 U.S.C. §§ 3632(a)(1), (4)). The BOP further utilizes PATTERN to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." Id. Two scores are calculated by utilizing PATTERN: (1) A person's risk of reoffending in general; and (2) A person's risk of reoffending with a crime of violence. For males, PATTERN includes the following "risk items": (1) An inmate's current age; (2) Whether he has a Walsh conviction; (3) Whether he committed a violent offense; (4) His criminal history points; (5) His history of escapes; (6) His history of violence; (7) His education score, such as

9

whether he is enrolled in a GED program or has the equivalent of a high school diploma; (8) Completion of drug treatment programs; (9) All incident reports in the past 120 months; (10) Whether these incident reports were serious; (11) The amount of time since the last incident report; (12) Whether he agreed to participate in the financial responsibility program;[7] (13) The number of eligible programs completed; and (14) The number of work programs completed. Depending on the scoring in each category, the inmate is given fourteen general and violent scores that are totaled to assess whether the inmate is a minimum, low, medium, or high risk of reoffending in general and with a crime of violence. At a minimum, the BOP must reassess an inmate's PATTERN score annually if the inmate successfully participates in evidence-based recidivism reduction programming or productive actives. 18 U.S.C. § 3632(d)(5).

Under the FSA, eligible inmates may *earn* time credits irrespective of his or her recidivism risk. See 18 U.S.C. § 3624(g) and 28 C.F.R. § 523.42. Only inmates with low and minimum risk scores, however, may have these earned credits *applied* to his or her rerelease custody or early transfer to supervised released. Id.; also see 18 U.S.C. §§ 3632(d)(4)(C) and 3624(g); 28 C.F.R. § 523.44(c)(1) and (d)(1). Title 18 U.S.C. § 3624(g) provides, in pertinent part, as follows:

> (1) Eligible prisoners.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—
>> (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
>>
>> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism

---

[7] The PATTERN form on the BOP's website appears to contain a misnumbering. Although there appears to be fifteen "risk factors," the from omits number 12 from its numbering.
*See* https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3

risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

(D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner—

>> (I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

>> (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that –
>> >> (aa)   the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

>> >> (bb)   the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

>> >> (cc)   the prisoner is unlikely to recidivate; or

>> (ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624. Concerning prerelease custody, 28 C.F.R. § 523.44(c) provides as follows:

>> (c) Prerelease custody. The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:

>> >> (1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or

>> >> (2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that: (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release; (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and (iii) The prisoner is

unlikely to recidivate.

28 C.F.R. § 523.44(c). Regarding early transfer to supervised release, 28 C.F.R. § 523.44(d)

states as follows:

> (d) Transfer to supervised release. The Bureau may apply FSA Time Credits
> toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an
> eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c)
> of this section:
>> (1) An eligible inmate has maintained a minimum or low recidivism risk
>> through his or her last risk and needs assessment;
>>
>> (2) An eligible inmate has a term of supervised release after imprisonment
>> included as part of his or her sentence as imposed by the sentencing court;
>> and
>>
>> (3) The application of FSA Time Credits would result in transfer to
>> supervised release no earlier than 12 months before the date that transfer
>> to supervised release would otherwise have occurred.

28 C.F.R. § 523.44(d); also see Gadsden v. Joseph, 2023 WL 8006375, at *2-3 (D.S.C. Oct. 27,

2023), report and recommendation adopted, 2023 WL 8005872 (D.S.C. Nov. 17, 2023)("The

statute defines an eligible prisoner, in part, as one who has 'shown through the periodic risk

reassessments a demonstrated risk recidivism risk reduction or *has maintained a minimum or low*

*recidivism risk*, during the prisoner's term of imprisonment.'")

In the instant case, Plaintiff appears to argue that Defendants violated his liberty interest

in the application of earned time credits under the FSA.[8] To determine whether an inmate retains

---

[8] The BOP had until January 15, 2022 to implement the FSA and Plaintiff would have been required to be "eligible" for application of his earned time credits meaning that he (1) maintained a low recidivism status and (2) had accumulated enough credits to "equal to the remainder of the prisoner's imposed term of imprisonment." Plaintiff acknowledges that in his Section 2241 proceedings, AUSA Bailey explained that Plaintiff was not currently eligible for the application of his earned time credit under the FSA because Plaintiff's most recent assessment indicated a medium risk of recidivism (March 3, 2022). (Document No. 11, p. 20); (*Also see* Civil Action No. 1:22-00043, Document No. 9-2, pp. 2 and 6.) As an Exhibit, AUSA Bailey attached the Declaration of Destiny Spearen, a Paralegal for the Beckley Consolidated Legal Center. (Civil Action No. 1:22-00043, Document No. 9-2, pp. 2.) Concerning the calculation of earned time credit, Ms. Spearen explained as follows:

> The BOP's Office of Research and Evaluation Branch is currently calculating the retroactive
> application of FTC for inmates who may immediately apply the credit. Because Petitioner has a

a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. It is well established that a prisoner has no constitutional or inherent right to be released before the completion of a valid sentence. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed. 668 (1979). Additionally, prisoners do not have a protected liberty interest in prerelease custody, such as home confinement or RRC placement. Whittenberg v. Ziegler, 2015 WL 2406111, at *1 n.2 (S.D.W. Va. May 19, 2015)(inmates do not possess a constitutionally protected interest in home or community confinement). Plaintiff contends he was entitled to early release based upon earned time credit under the FSA. If the relevant statute, however, "places no substantive limitations on official discretion" in granting an early release from a valid sentence, no constitutionally protected liberty interest is implicated. Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). The FSA does not contain any provision that creates a mandatory right for an inmate to have earned time credits applied. See White v.

---

medium recidivism 1isk score and is unable to apply any credit he has earned , the number of days he has earned is yet to be calculated. Once the SENTRY infrastructure is built to auto -calculate the number of FTC day for all inmates, regardless of risk level, Petitioner's actual number of FTC days will be available. In the interim, Petitioner's Inmate Profile reflects he is eligible to earn FTC, based on the notation in SENTRY that he is "FTC-ELIO."

(Id.)

Warden, 2023 WL 4867562, * 10 (D.Md. July 31, 2023)(noting there are two "critical differences" between good-time credits and earned time credits under the FSA).[9] As explained in White, there are "critical difference" between good-time credits under Section 3624 and earned time credits under the FSA:

> [U]nlike good-time credit[10] accumulated under § 3624(b), [earned time credits] are not a general entitlement. Instead, prisoners are merely afforded the opportunity to earn [time credits] by participating in recidivism-reduction programming. Although [earned time credits] themselves are a recent creation, many courts examining similar time-credit schemes have held that the loss of a mere opportunity to accumulate credit towards a sentence is not sufficient to create a protected liberty interest.... The general rule that the loss of an opportunity to earn a reduction in sentence does not amount to infringement of a protected liberty interest makes particular sense in the context of [earned time credits], as the opportunity to participate in recidivism-reduction programming can be lost for several reasons, including reasons having nothing to do with the conduct or blameworthiness of the prisoner. For example, a prisoner who is temporarily transferred from the custody of the BOP to a non-BOP facility to testify at trial, *see* 28 U.S.C. § 2241(c)(5), would be unable to successfully participate in BOP recidivism-reduction programming during the time that the prisoner remained outside the custody of the BOP, *see* 28 C.F.R. § 523.41(c)(4)(iii). The same would be true of a prisoner who is transferred to a hospital for extended treatment of a serious medical need. *See id.* § 523.41(c)(4)(ii). The statute and accompanying regulations betray no expectation that [earned time] credits could reasonably be regarded as an entitlement, rather than as a benefit that a prisoner might or might not be able to earn at various times during his detention. This is too flimsy an expectation to give rise to a protected liberty interest. And because the opportunity to earn [time credits] is not a

---

[9] Although "good-time credits entitle a prisoner to a reduction in his sentence," earned time credits under the FSA "are not so straightforward." *White*, 2023 WL 4867562, * at 10.

[10] Inmates do not have a constitutionally established liberty interest in the opportunity to earn good time credits. *Reynolds v. Federal Bureau of Prisons*, 2022 WL 19039523, * 3 (S.D.W.Va. April 12, 2022)("[C]ourts in this circuit have held that an inmate does not have a constitutionally established liberty interest in the opportunity to earn future good time credits at a given rate")(collecting cases), *report and recommendation adopted*, 2023 WL 1777378 (S.D.W.Va. Feb. 6, 2023); *Green v. Stephen*, 2020 WL 9421090, * 4 (D.S.C. Nov. 18, 2020)(citation omitted)("Although a prisoner may have due process rights as to good-time credits which are taken away from him, the opportunity to earn good-time or work credits is not a constitutionally established liberty interest."); *Mills v. Holmes,* 95 F.Supp.3d 924, 931-32 (E.D.Va. March 24, 2015)("[I]nmates have no liberty interest derived from the Constitution itself in receiving good-time credit or in a particular good-time credit earning level.")(citation omitted); *McManus v. Blalock*, 2015 WL 9183394, * 11 (D.Md. Dec. 17, 2015)("Although prisoners are afforded due process protections when the loss of actual, earned, good-time credits is at issue, . . . the Supreme Court has afforded no such right when the opportunity to earn such credit is at issue").

protected liberty interest, [Petitioner] was not entitled to due process before he lost that opportunity by getting sent to the SHU.

Id.(citing Fiorito v. Fikes, 2022 WL 16699472 (D.Minn. Nov. 3, 2022), aff'd, 2023 WL 4841966 (8th Cir. 2023)). Although the statute permits a prisoner to earn time credits under the FSA, the statute limits the application of those earned time credits to inmates that have been determined eligible. The FSA gives the Attorney General discretion in assessing each prisoner's recidivism risk level and in determining when a prisoner is at a minimum or low recidivist risk. 18 U.S.C. §§ 3632 and 3624; Burg v. Nicklin, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019) (recognizing the exclusive authority and discretion of the BOP over an inmate's placement in the context of the FSA); United States v. Egan, 2019 WL 1552266, *1 (S.D.N.Y. Apr. 10, 2019)(acknowledging the BOP's discretion and finding that courts have no authority to grant an inmate early release to home confinement); Zheng v. La Tuna FCI, 2019 WL 1472889, * 3 (W.D.Tex. April 3, 2019)(acknowledging the Attorney General's discretion regarding housing of inmates and finding that a court granting an inmate's request for home confinement would put "the judicial branch in charge of designating the place of confinement.") Section 3632(d)(4)(C) provides that the BOP Director "shall transfer eligible prisoners, as determined under section 3624(g)" and Section 3624(g) provides that the application of FSA time credits depends on the prisoner maintaining "a minimum or low risk to recidivate" as assessed by the BOP or on the prisoner receiving an exception to that requirement from the prison warden. 18 U.S.C. § 3624(g)(1)(D). A prisoner has no constitutional right to relief that is purely discretionary. Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 465, 101 S.Ct. 2460, 69 L.Ed. 158 (1981). Thus, prisoners do not have a protected liberty interest in the application of earned times credits under the FSA. See Hicks v. Heckard, Case No. 5:23-cv-00581, Document No. 14

(S.D.W.Va. Feb. 1, 2024)(M.J. Eifert)("The BOP has discretionary authority as to whether and when to release a prisoner into prerelease custody under § 3624(g)."); Gant v. King, 2023 WL 6910771 (D.Minn. Oct. 19, 2023)("Given the contingent nature of the application of FSA time credits to prerelease custody, they cannot reasonably be regarded as an entitlement."); Newell v. Fikes, 2023 WL 2543092, * 3 (S.D.Ga. Feb. 21, 2023)(same); Otugya v. Warden, 2023 WL 3254438, * 4 (E.D. Cal. May 4, 2023)("Whether or not the BOP grants Petitioner credits under the FSA is entirely within its discretion. The 'failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.'")(citing Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999).

Although Plaintiff alleges his PATTERN score was incorrect due to his criminal history points being improperly calculated,[11] these allegations do not establish that Plaintiff was entitled to release. There is no constitutionally protected liberty interest implicated when the BOP calculates a prisoner's PATTERN score and resulting recidivism risk level. See O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991)(The "classification and transfer of inmates among authorized institutions is peculiarly an administrative function fully within the discretion given to prison officials."); Hicks, supra, Case No. Case No. 5:23-cv-00581(finding "the parameters used to determine the PATTERN risk assessment are entirely within the discretion of the BOP and are not reviewable by this court"); Walker v. Fikes, 2023 WL 4004123, at *2 (S.D. Ga., May 16,

---

[11] The Warden indicated on June 8, 2021, that Plaintiff's "overall risk level" was "low." (Civil Action No. 1:22-00043, Document No. 11-1, p. 1.) Plaintiff further attaches copies of his Male PATTERN Risk Scoring dated January 8, 2021, April 28, 2021, September 24, 2021, March 3, 2022. (Id., pp. 2 – 5.) A review of the PATTERN Scores for September 24, 2021 and March 3, 2022, confirms that Plaintiff had a "low" security level. (Id., pp. 4 – 5.) These PATTERN Scores, however, further confirm that Plaintiff had a medium recidivist risk. (Id.) Plaintiff contends that these PATTERN Scores contained an error in calculating his criminal history score, which was corrected in April 1, 2022. (Id., Document No. 10-1.) Even recalculating these PATTERN Scores based upon the alleged corrected criminal history score, the earliest such would have resulted in a low recidivist risk would have been on March 3, 2022. (Id., Document No. 11-1, pp. 2 – 5 and Document No. 10-1.)

2023), <u>report and recommendation adopted</u>, 2023 WL 3997068 (S.D. Ga., June 14, 2023)(decisions made by the BOP pursuant to Section 3624(g) are not subject to judicial review unless those decisions are outside its statutory authority); <u>also see</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(stating that "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). Moreover, federal prisoners have no constitutional or inherent right to receive a particular security or custody classification. <u>See</u> <u>Moody v. Daggett</u>, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed[12] . . .  And is not otherwise violative of the Constitution." <u>Slezak v. Evatt</u>, 21 F.3d 590, 594 (4th Cir. 1994),

---

[12] FSA time credits "affect the timing of an inmate's conditional release from prison, but they do not alter the sentence itself." *Puccio v. Ortiz*, 2022 WL 4468599, * 1 (D.N.J. Sept. 23, 2022)(quoting *Scott v. Schuylkill FCI*, 298 Fed.Appx. 202, 204 (3rd Cir. 2008); *also see Hicks, supra*, Case No. Case No. 5:23-cv-00581(recognizing that the denial of prerelease custody pursuant to the FSA does "not affect the duration of an inmate's sentence in a constitutional way", but "merely changes the location of where the [inmate] is serving his sentence."); *Komando v. Luna*, 2023 WL 310580, * 4 (D.N.H. Jan. 13, 2023)("FSA time credits, when applied, advance the date when the prisoner will be placed in 'prerelease custody' (including home confinement or residential reentry facilities), or accelerate the date when the prisoner will leave BOP custody to start a term of court imposed supervised release.")

cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5ᵗʰ Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal dismissed by, 215 F.3d 1320 (4ᵗʰ Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). Accordingly, the undersigned finds that Plaintiff has failed to allege a cognizable due process claim.

### D.    Extension of <u>Bivens</u>:

As stated above, a Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens, 403 U.S. at 395 -97, 91 S.Ct. at 1999. Bivens core premise is to deter individual officers' unconstitutional acts. Correctional Services Corp v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend Bivens to confer a right of action for damages against private entities acting under the color of federal law). In Bivens, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. Bivens, 403 U.S. at 396, 91 S.Ct. 1999; Hernandez v. Mesa, 589 U.S. ___ 140 S.Ct. 735, 741, 206 L.Ed.2d 29 (2020)(In Bivens, "the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents.") In the years following the decision in Bivens, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment for a claim of sex discrimination, Davis v. Passman, 442

18

U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment for a prisoner's claim of inadequate medical care, <u>Carlson v. Green</u>, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since <u>Carlson</u>, the Supreme Court has consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants. See <u>Egbert v. Boule</u>, 596 U.S. 482, 486, 142 S.Ct. 1793, 1799-80, 213 L.Ed.2d 54 (2022)(noting that the Supreme Court has declined 11 different time to imply similar causes of actions in the years since *Bivens* was decided); <u>FDIC v. Meyer</u>, 510 U.S. at 484-86, 114 S.Ct. 996(declined to extend <u>Bivens</u> to permit suit against a federal agency); <u>also see</u> <u>Bulger v. Hurwitz</u>, 62 F.4th 127, 138 (4th Cir. March 3, 2023)(rejecting request to extend *Bivens* to a prisoner's Eighth Amendment failure to protect and intervene claims against BOP officials); <u>Dyer v. Smith</u>, 56 F.4th 271, 275 (4th Cir. 2022)(declining request to extend *Bivens* to claims against Transportation and Security Administration officers for violations of the First and Fourth Amendments); <u>Tate v. Harmon</u>, 54 F.4th 839, 841-42 (4th Cir. 2022)(rejecting request to extend *Bivens* to conditions of confinement claim under the Eighth Amendment); <u>Annappareddy v. Pascale</u>, 996 F.3d 120, 126 (4th Cir. 2021)(declining to extend *Bivens* to claims against federal prosecutors and investigators for violations of the Fourth and Fifth Amendments); <u>Earle v. Shreves</u>, 990 F.3d 774, 776 (4th Cir. 2021)(rejecting request to extend *Bivens* to claims of unlawful retaliation by prison officials for filing grievances in violation of the First Amendment); <u>Tun-Cos v. Perrotte</u>, 922 F.3d 514, 517-18 (4th Cir. 2019)(declining to extend *Bivens* to claims of unlawful searches and seizures by Immigration and Customs Enforcement agents in violation of the Fourth and Fifth Amendments); <u>Holly v. Scott</u>, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend *Bivens* to an Eighth Amendment claim against employees of a privately operated prison); <u>Lebron v. Rumsfeld</u>, 670 F.3d 540 (4th Cir. 2012)(declining to extend *Bivens* in a military context). In

19

2017, the Supreme Court made clear the very limited scope of <u>Bivens</u> actions and that "expanding the <u>Bivens</u> remedy is now a disfavored judicial activity." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 134, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted <u>Bivens</u> claim is not one of the three <u>Bivens</u>-type actions previously recognized by the Supreme Court, closer scrutiny is required. <u>Id.</u> More recently, the Supreme Court in <u>Egbert</u> noted "[n]ow long past the heady days in which this Court assumed common-law powers to create causes of action [such as <u>Bivens</u>], we have come to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power." <u>Egbert</u>, 596 U.S. at 490, 142 S.Ct. at 1802(internal citations omitted). The Supreme Court stated that "[i]n both statutory and constitutional cases, our watchword is caution." <u>Hernandez</u>, 589 U.S. at ___, 140 S.Ct. at 742; <u>Tate</u>, 54 F.4th at 844(stating that the Supreme Court's "recent admonitions are clear: '[T]he Judiciary's authority to [create a cause of action under the Constitution] is, at best, uncertain,' . . . ; courts must beware of 'arrogating legislative power'. . .; and 'our watchword is caution,'. . .")(internal citations omitted). The Supreme Court explained that "a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress, . . . and no statute expressly creates a *Bivens* remedy." <u>Hernandez</u>, 589 U.S. at ____, 140 S.Ct. at 742; <u>also see</u> <u>Egbert</u>, 596 U.S. at 502, 142 S.Ct. at 1809("[M]ore recently, we have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution.")

 Although the Supreme Court called into doubt the validity of the "implied rights" in <u>Bivens</u>, the Supreme Court did not overturn <u>Bivens</u>. <u>Id.</u> The Supreme Court, however, "impose[d] a highly restrictive analysis for <u>Bivens</u> cases by (1) narrowing the precedential scope of <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> and (2) imposing a broad standard of criteria that, if satisfied,

require courts to reject any expansion of <u>Bivens</u> remedies." <u>Tate</u>, 54 F.4th at 844. The Supreme Court explained that when asked to extend <u>Bivens</u>, a Court should engage in a two-step inquiry. <u>Hernandez</u>, 489 U.S. at ___, 140 S.Ct. at 743. First, the Court should inquire "whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" <u>Id.</u>(citation omitted). The Supreme Court clarified that its "understanding of a 'new context' is broad," thereby requiring the scope of the exiting <u>Bivens</u> causes of action to be narrowly construed. <u>Id.</u> Second, if a claim is found to arise in a new context, the Court should inquire "whether there are any 'specific factors [that] counsel hesitation' about granting the extension." <u>Id.</u>(quoting <u>Abbasi</u>, 582 U.S. at 135, 137 S.Ct. at 1857); <u>also see</u> <u>Greenpoint Tactical Income Fund LLC v. Pettigrew</u>, 38 F.4th 555, 561 (7th Cir. 2022)(The two-part test used post-*Abbasi* to evaluate claims under *Bivens* remains the same after *Egbert*); <u>Feao v. Ponce</u>, 2023 WL 3213553 (C.D.Cal. March 3, 2023)(Although *Egbert* indicates that existence of "special factors" can itself create a new context, the court rejected defendants' argument that *Egbert* had the effect of collapsing the inquiry altogether and dispensing with the "next context" inquiry).

In <u>Abbasi</u>, the Supreme Court set out a framework for determining whether a claim presents a "new <u>Bivens</u> context." <u>Abbasi</u>, 582 U.S. at 140, 137 S.Ct. at 1860. As stated above, the Supreme Court has recognized a <u>Bivens</u> remedy in only three cases: (1) A Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. <u>Id.</u> at 1854-55(citations omitted). The <u>Abbasi</u> Court explained that "[i]f the case is different in a meaningful way from previous <u>Bivens</u>

cases decided by this Court, then the context is new." Id. at 1859. Although the Abbasi Court did

not provide "an exhaustive list of differences that are meaningful enough to make a given

context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers
> involved; the constitutional right at issue; the generality or specificity of the
> official action; the extent of judicial guidance as to how an officer should respond
> to the problem or emergency to be confronted; the statutory or other legal
> mandate under which the officer was operating; the risk of disruptive intrusion by
> the Judiciary into the functioning of other branches; or the presence of potential
> special factors that previous *Bivens* cases did not consider.

Id. at 1859-60. In Tate, the Fourth Circuit recognized that a single fact distinguishing a case from

Bivens, Davis, and Carlson, potentially can create a "new context." Tate, 54 F.4th at 846.

Plaintiff argues that Defendants violated his Fourth, Eighth, and Fourteenth Amendment

rights by subjecting him to over-detention. (Document No. 11.) Specifically, Plaintiff argues that

Defendants subjected him to over-detention by failing to appropriately and timely apply his

earned time credits pursuant to the FSA. (Id.) Thus, the undersigned first considers whether

Plaintiff's Fourth, Eighth and Fourteenth Amendment claims concerning his alleged

over-detention constitutes an improper extension of Bivens. Although the Supreme Court has

recognized an implied right of action for an Eighth Amendment claim based on deliberate

indifference to serious medical needs in Carlson and a Fifth Amendment claim regarding sex

discrimination in Davis, the Supreme Court has never held that *Bivens* extends to a claim for

over-detention. See Wormley v. United States, 601 F.Supp.2d 27 (D.D.C. 2009); also see

Bistrian v. Levi, 912 F.3d 79, 95 (3rd Cir. 2018)(finding that a "punitive detention claim does

amount to an extension of *Bivens* into a new context"); Rogers v. Warden of FCI McDowell,

2022 WL 17418577, * 3(D.S.C. Oct. 12, 2022)(noting that plaintiff's over-detention claim

"likely fails under *Egbert's* more demanding approach, which now renders a *Bivens* remedy

unavailable 'in most every case.'"); Guilford v. FCI Williamsburg, 2022 WL 4080769, * 3, fn. 3 (E.D.Penn. Sept. 6, 2022)("The Court is unaware of any cases in which a court has extended *Bivens* to over-detention claims."). Based upon the foregoing, the undersigned finds that Plaintiff's over-detention claim presents a new <u>Bivens</u> context.

Next, the Court must determine whether <u>Bivens</u> should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." <u>Wilkie</u>, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." <u>Abbasi</u>, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); <u>Malesko</u>, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new <u>Bivens</u> remedy). Alternative remedies can include administrative, statutory, equitable, and state law remedies. First, the undersigned finds that Plaintiff had alternative remedies available to him through the BOP administrative remedy program. The BOP administrative remedy program allows inmates to seek formal review of issues relating to any aspect of his or her confinement. Second, any claim regarding the improperly calculation of Plaintiff's sentence would be actionable in *habeas corpus* pursuant to 28 U.S.C. 2241. Thus, the undersigned finds that Plaintiff had alternative remedies available to address his allegations of over-detention. <u>Wormley</u>, 601 F.Supp.2d 36-37(finding inmate had alternative remedies, such as habeas corpus.)

Irrespective of whether an alternative remedy exists, a <u>Bivens</u> remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative

action by Congress.'" <u>Abbasi</u>, 137 S.Ct. at 1857(quoting <u>Carlson</u>, 446 U.S at 18, 100 S.Ct. 1468). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." <u>Id.</u> at 1857-58. Put simply, "a factor must cause a court to hesitate before answering that question in the affirmative." <u>Id.</u> at 1858. "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." <u>Id.</u> at 1865. The <u>Abassi</u> Court explained that since Congress did not provide for a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggest Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." <u>Id.</u> The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.

<u>Id.</u> The PLRA's exhaustion requirement clearly applies to <u>Bivens</u> actions. <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits." <u>Jones v. Bock</u>, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing <u>Porter v. Nussle</u>, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." <u>Turner v. Safely</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citation omitted). The Supreme Court explained that "[r]unning a prison is an

inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259. Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding Bivens to Plaintiff's over-detention claim. See Reid, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim); Gehrke, 2018 WL 1334936 at * 4(same); Gonzalez, 269 F.Supp.3d at 61(same); Wormley, 601 F.Supp.2d at 36-37(noting that the court was "wary, for example, of establishing overdetention as an act for which monetary damages are available from federal officials" because it "seems to be a situation where Congress might be better equipped to weigh the long-term effects of various possible remedial schemes and choose the best option); Bistrian, 912 F.3d at 95(finding that special factors counsel against a new *Bivens* remedy in the context of a punitive detention claim).

Furthermore, the Abbasi Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." Abbasi, 137 U.S. at 1858. The impact on governmental operations systemwide include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." Id. The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate

the impact of a new species of litigation' against those who act on the public's behalf." <u>Wilkie</u>, 551 U.S. at 562, 127 S.Ct. 2588(quoting <u>Bush</u>, 462 U.S at 389, 103 S.Ct. 2404). In <u>Abbasi</u>, the Supreme Court further explained as follows:

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

<u>Abbasi</u>, 137 U.S. at 1856. The undersigned notes that expanding <u>Bivens</u> to allow an over-detention claim would clearly result in an increase of suits by inmates and former inmates. This increase in suits would result in increased litigation costs to the Government and impose a burden upon individual employees to defend such claims. Accordingly, the undersigned finds there are special factors counselling hesitation as to the expansion of <u>Bivens</u> to an over-detention claim. Based upon the foregoing, the undersigned respectfully recommends that the District Court find that Plaintiff has failed to state a claim upon which relief cannot be granted concerning his over-detention claim.

2.   **<u>FTCA</u>:**

In his Amended Complaint, Plaintiff alleges that he is suing under the FTCA to recover damages from the United States for injuries sustained as a result of false imprisonment, negligence, intentional infliction of emotional distress, and unreasonable search and seizure. (Document No. 11, pp. 35 – 41.) Plaintiff alleges that he was subjected to false imprisonment, negligence, intentional infliction of emotional distress, and an unreasonable search and seizure due to BOP employees failing to properly and timely apply his earned time credit pursuant to the FSA.

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id. Thus, the FTCA is a limited waiver of sovereign immunity. Section 2680, however, exempts from the waiver certain categories of claims. See 28 U.S.C. §§ 2680(a)-(n).

### A.    Constitutional Claims:

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. Carlson, 446 U.S. at 21 - 23, 100 S.Ct. at 1472 -74; Bush v. Lucas, 462 U.S. 367, 378, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)(finding that a FTCA claim is not "a substitute for a Bivens action"). The FTCA expressly exempts constitutional claims from the FTCA's exclusiveness of remedy rule. Section 2679, however, provides that the FTCA is the exclusive remedy for redress of common law torts committed by federal officials acting within the scope of their office and employment. In order to maintain a case against the United States under the FTCA, Plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the

necessary elements of a tort claim cognizable under law of the State in which the action accrued. Accordingly, the undersigned finds that the FTCA does not apply to Plaintiff's constitutional claims of false imprisonment and unreasonable searches and seizures. See Meyer, 510 U.S. at 477-78, 114 S.Ct. 996(holding that a "constitutional tort claim is not 'cognizable' under § 1346(b) because it is not actionable under § 1346(b)"); Thibeaux v. United States Attorney General, 275 Fed. Appx. 889, 893 (10th Cir. 2008) ("Although the FTCA permits certain causes of action to be brought against federal officers acting in their official capacities, Thibeaux's constitutional claims are not cognizable under the FTCA."); Billings v. United States, 57 F.3d 797, 800 (9th Cir. 1995) ("[C]onstitutional claims are outside the purview of the Federal Tort Claims Act.")

**B.    Discretionary Function:**

Section 2680(a) contains the discretionary function exception. The discretionary function exception excludes from the FTCA's waiver of sovereign immunity:

> [a]ny claim based upon an action or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Plaintiff bears the burden of demonstrating that the discretionary function exception does not apply. Welch v. United States, 409 F.3d 646, 650-51 (4th Cir. 2005); LeRose v. United States, 2006 WL 5925722 * 8 (S.D.W.Va. May 17, 2006)(J. Copenhaver). Whether the discretionary function exception bars suit against the United States depends upon two factors. See United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, the conduct at

issue must involve "an element of judgment or choice." <u>Berkovitz</u>, 486 U.S. at 536, 108 S.Ct. 1959; <u>also see</u> <u>Williams v. United States</u>, 50 F.3d 299, 309 (4th Cir. 1995). Where there is a mandatory statute, regulation, or policy, there is no discretion, and therefore no exception "because 'the employee has no rightful option but to adhere to the directive.'" <u>Gaubert</u>, 499 U.S. at 322, 111 S.Ct. at 1273(quoting <u>Berkovitz</u>, 486 U.S. at 536, 108 S.Ct. 1954.) Second, if conduct involved an "element of judgment or choice," the Court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield. <u>Gaubert</u>, 499 U.S. at 322 - 23. "Because the purpose of the exception is to prevent judicial second-guessing of the legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on consideration of public policy." <u>Id.</u> at 323. The focus is on the "nature of the conduct" and not the "status of the actor." <u>See</u> <u>Gaubert</u>, 499 U.S. at 325. Thus, the Court should "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." <u>Suter v. United States</u>, 441 F.3d 306, 310 - 11 (4th Cir. 2006). "When a statute, regulation, or agency guideline permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." <u>Id.</u>

First, the Court must consider whether the challenged conduct was discretionary or involved an element of judgment or choice. Plaintiff contends that BOP employees failed to properly and timely apply his earned time credits under the FSA. As thoroughly explained in Section C above, the BOP has discretion concerning the application of FSA credit, classification

of inmates, and placement of inmates. Based on the foregoing, the undersigned finds that the first prong of the discretionary function test is satisfied.

Next, the undersigned will consider whether the judgment is of the kind that the discretionary function exception was designed to shield. As stated above, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. Gaubert, 499 U.S. at 324. The BOP "must balance a variety of factors and employ considerable discretion in determining how to go about protecting prisoners from harm, while also managing costs and ensuring the safety of the prison staff and the *community*." Caudle v. United States, 72 F.3d 132 (7th Cir. 1995)(emphasis added). Additionally, decisions concerning the placement or classification of inmates are grounded in public policy. See United States v. Oprea, 2023 WL 6958690, * 3 (D.N.H. Oct. 20, 2023)(noting that the FSA "facilitates the general public policy goal of protecting the public from future criminal activity); Rich, 811 F.3d at 146(Since prison officials' decisions as to where to place inmates "invoke several policy considerations for prison administrators, they are precisely the kind of determinations that the discretionary function exception is intended to protect."); Cohen, 151 F.3d at 1344(finding that the BOP's "actions in classifying prisoners and placing them in institutions involve conduct and decisions that meet both prerequisites for application of the discretionary function exception"); Usry v. United States, 2013 WL 1196650, * 7 (N.D.W.Va. March 25, 2013), aff'd, 545 Fed.Appx. 265 (4th Cir. 2013)(finding that decisions regarding the placement of inmates "are unquestionably grounded in social, economic, safety and security concerns"); Bailor v. Salvation Army, 854 F.Supp. 1341 (N.D.In. June 10, 1994)(finding that the

BOP's decision to place an inmate into a prerelease program was grounded in social and economic policy, and any claims based on this placement were barred by the discretionary function exception). Based on the foregoing, the undersigned finds that the discretionary function exception applies because both prongs of the discretionary function test are satisfied. Accordingly, the undersigned respectfully recommends that Plaintiff's above claims be dismissed. See Blankenship v. United States, 2022 WL 1768858 (4th Cir. June 1, 2022)(affirming the district court's dismissal of plaintiff's malicious prosecution and intentional infliction of emotional distress claims based upon the discretionary function exception).

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (Document No. 1), **DISMISS** Plaintiff's Complaints (Document Nos. 2 and 11), and **REMOVE** this matter from the docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: February 6, 2024.

Omar J. Aboulhosn
United States Magistrate Judge